**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO. 06-30008-01** |
| **VERSUS** | * | **JUDGE JAMES** |
| **ARCADIO VILLALOVOS** | * | **MAGISTRATE JUDGE HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Suppress filed by the defendant, Arcadio Villalovos ("Villalovos") (Document No. 37-1). For reasons stated below, it is recommended that the motion be **DENIED.**

The evidence presented at a hearing held on Monday, July 10, 2006, demonstrated as follows. At approximately 4 a.m. on February 28, 2006, Officer Todd Newton ("Newton"), of the West Monroe Police Department, witnessed a tan 2000 Ford Explorer commit numerous traffic violations[1] while traveling eastbound on Interstate 20. Newton exited the patrol car, approached the vehicle, and asked the driver, Villalovos, for his driver's license and vehicle registration, which Villalovos subsequently produced. At this time, Newton noticed two air fresheners hanging from the rear-view mirror, which the officer, based on his drug interdiction experience, believed to be being used as a masking agent. At Newton's request, Villalovos exited the vehicle at walked to the rear of the vehicle.

Newton explained to Villalovos why he had stopped him and made a general inquiry into his travel plans. While explaining the reasons for the stop, Newton noticed that Villalovos refused to make eye contact. Villalovos then explained that the vehicle belonged to the

---

[1] These traffic violations included speeding (67 in a 60 mile per hour zone), improper lane usage, and multiple beam road lighting.

passenger, Ricardo Gallegos (Gallegos).  Newton proceeded to question Villalovos about where he had been and where he was going.  Villanovos responded that they were traveling from Texas, where they had been for several weeks, to Jackson, Mississippi ,to visit his aunt.

Officer Newton then contacted Gallegos and observed Gallegos' hands shaking as he handed his identification to Newton.  When asked if he owned the car, Gallegos replied that the car belonged to his uncle.  Gallegos provided Newton with the uncle's name; however, the name did not match the name on the vehicle's registration.  Newton asked the passenger where they were traveling, and Gallegos responded that they were going to Alabama.

After receiving conflicting stories from Gallegos and Villalovos, Newton returned to the rear of the vehicle to reconfirm with Villalovos that his story was that they were traveling to Mississippi.  Villalovos again stated that Jackson, Mississippi was their destination.  Newton asked Villalovos for his aunt's name and address, and Villalovos responded that he did not know them and that she was really Gallegos' aunt and not his.  Newton asked Villalovos whether any weapons were present in the vehicle, and Villalovos responded with a flat, "No."  However, when asked if any illegal drugs were present in the vehicle, Villolovos responded with a more evasive answer of "not that I know of.  It's the passenger's vehicle."

At this time, Newton concluded that Villalovos and Gallegos actions "were not consistent with the innocent motoring public" based upon (1) the conflicting stories, (2) the presence of a masking agent, (3) the nervous behavior, (4) the lack of knowledge as to the registered owner's name, and (5) the evasive answer to questioning about the presence of illegal narcotics in the vehicle.  Newton then asked both Villalovos and Gallegos in English and Spanish for permission to search the vehicle, to which both gave their consent.  While searching the rear cargo area, Newton detected the odor of fresh glue.  Due to his experience and training in narcotics

interdiction, Newton suspected carpet had been recently replaced to conceal a hidden compartment. Additionally, the officer observed that the plastic molding of the cargo area had been altered. Upon further inspection, Newton discovered a hidden compartment under the spare tire compartment containing approximately 30 kilos of cocaine powder.

## LAW AND ANALYSIS

The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The reasonableness of traffic stop searches and seizures under the Fourth Amendment is analyzed in accordance with the framework set forth by the Supreme Court in *Terry v. Ohio*. 392 U.S. 1 (1968). Under *Terry*, the analysis is two-tiered: (1) whether the officer's action of stopping the vehicle was justified at its inception; and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop. *United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir. 1993)(citing *Terry*, 392 U.S. at 19-20); *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001).

In *Whren v. United States*, the Supreme Court unanimously upheld a traffic stop in which an officer observed a defendant commit a traffic violation. 517 U.S. 806 (1996). In accordance with its long line of cases, the Supreme Court held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. The Supreme Court flatly rejected an invitation by the defendant to look to the subjective motivation of the police officer at the time of the stop. In *Whren*, the court found the stop reasonable under the Fourth Amendment because the officers had probable cause to believe that petitioners had violated the traffic code. The officer had observed the violation firsthand. *Id.* at 818; *see also United States v. Harrison*, 918 F.2d 469 (5th Cir. 1990).

To the extent that Villalovos challenges the propriety of the initial stop, his claim is without merit. Pursuant to *Terry* and *Whren*, stopping a vehicle for a traffic violation is justified so long as probable cause exists. *See Whren*, 517 U.S. at 810; *Terry*, 392 U.S. at 19-20. Newton testified that he directly observed the vehicle Villalovos was driving commit several traffic violations; including speeding, improper lane usage, and multiple beam road lighting. Villalovos has provided no controverting evidence on these facts; therefore, Newton had sufficient probable cause and was wholly justified in stopping the vehicle.

Under the second prong of the *Terry* inquiry, the detention of a vehicle's occupants must be temporary and last no longer than necessary to effectuate the purpose of the stop. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). Included in the list of actions a police officer may take pursuant to a routine traffic stop, are the following: examine the driver's license and registration of the driver and vehicle, and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle was stolen; ask a driver to exit the vehicle; and ask the a driver and any passengers about the purpose and itinerary of their trip and even other unrelated questions. *See generally Brigham*, 382 F.3d at 508; *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002); *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999); *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). Detention during these actions is reasonable under the Fourth Amendment.

The question before the Court is whether Newton's actions after he legitimately stopped the Ford Explorer were reasonably related to (1) the circumstances that justified the stop, or (2) to dispelling his reasonable suspicion developed during the stop. This is because "a detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d

at 507 (citations omitted). Newton's questioning of Villalovos and Gallegos was fully within the scope of detention justified by the initial valid traffic stop, particularly after Newton discovered the (1) lack of knowledge as to the registered owner's name, (2) inconsistent stories as to the occupants' travel destination, (3) the passenger's extremely nervous behavior, and (4) evasive answers regarding the presence of illegal narcotics in the vehicle. The Fifth Circuit has "consistently approved a police officer's questioning a driver's travel plans where the driver . . . appeared to lack driving authority." *Brigham*, 382 F.3d at 508 (citations omitted). Given the brief duration of the stop,[2] Newton's actions were reasonable. The questioning simply exemplified a graduated response to emerging facts.

Because the underlying stop was justified at it inception, because of the totality of the circumstances that emerged thereafter, and because both individuals gave consent to search the vehicle, the undersigned finds that the stop and search were reasonable and recommends that the motion to suppress be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

---

[2]Officer Newton testified that the total elapsed time from the initial stop until the occupants gave consent to the search was no longer than 10 minutes.

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 21st day of July 2006.

*[signature]*
KAREN L. HAYES
U. S. MAGISTRATE JUDGE